UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE, | No. C-13-01137 DMR |
| Plaintiff(s), | **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FOR USE OF A PSEUDONYM; AND GRANTING IN PART DEFENDANTS' MOTION TO DISMISS PORTIONS OF THE FIRST AMENDED COMPLAINT** |
| v. | |
| JOHN F KENNEDY UNIVERSITY, | |
| Defendant(s). | |

Defendants John F. Kennedy University ("JFKU"), National University ("NU"), Sukie Magraw ("Magraw"), Cathia Walters-Knight ("Walters-Knight"), Ruth Fassinger ("Fassinger"), Haydee Montenegro ("Montenegro"), Steven Stargardter ("Stargardter"), and Jerry C. Lee ("Lee") filed two motions to dismiss. The court held a hearing on both motions on August 22, 2013.

In the first motion, Defendants move pursuant to Federal Rules of Civil Procedure 10(a), 17(a)(1), and 41(b) to dismiss the action without prejudice and for an order requiring Plaintiff, who has thus far proceeded pseudonymously, to refile under her true name. [Docket No. 11.] For the reasons stated below, this motion is granted.[1]

---

[1] Defendants' objected to Plaintiff's Opposition as untimely, and raised evidentiary objections to two exhibits attached to the Opposition. [Docket No. 23.] Because Defendants did not comply with Civ. Local Rule 7-3(c), which states that "any evidentiary or procedural objections to the opposition must be contained within the reply brief or memorandum," the court will not consider them.

In the second motion, Defendants move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss certain claims in the First Amended Complaint ("FAC"). [Docket No. 26.] This motion is granted in part and denied in part.

## I. BACKGROUND

Plaintiff's FAC makes the following allegations, all of which must be accepted as true for purposes of this motion. JFKU is a private, for-profit institution of higher education operating in Pleasant Hill, California. NU is a private, for-profit institute of higher education whose headquarters are located in La Jolla, California. *Id.* at ¶ 5. NU does business as the National University System, a group of affiliated institutions of higher education which includes JFKU. NU is governed by the National University System Board of Trustees.[2] Defendant Lee is being sued in his "official capacity" as Chancellor of the National University System Board of Trustees. Plaintiff alleges that, at all times, JFKU was acting with the scope of its actual or apparent agency with NU, the National University System, and Lee, and that NU and Lee exercised substantial control over JFKU. Defendant Magraw was at all relevant times Plaintiff's academic advisor and the chair of the Doctorate of Psychology Program. Defendants Walters-Knight and Montenegro were Plaintiff's instructors. Defendant Stargarter is and was at all relevant times the President of JFKU. Defendant Fassinger is and was at all relevant times a dean of JFKU.

In October 2009, Plaintiff enrolled in the Doctor of Psychology program at JFKU. Plaintiff has Attention Deficit Hyperactivity Disorder ("ADHD"). Upon matriculation, Plaintiff brought her learning disability to the attention of JFKU's Office of Disability Services ("ODS"). ODS evaluated Plaintiff's learning disability and permitted accommodations that included the right to tape record non-confidential portions of lectures and the option to answer multiple-choice exams with written explanations as additional means of demonstrating her knowledge of the subject matter.

According to Plaintiff, Defendants often reacted to her use of her accommodations with hostility or refusal to comply, because they either had not been properly informed by ODS or

---

[2] Plaintiff refers to the "National University Board of Trustees" as well as the "National University System Board of Trustees." *See* FAC at ¶¶ 4-5. It is not clear whether these entities are the same, but the court assumes they are for purposes of this motion.

2

disagreed with the ODS-approved accommodations. For example, in March 2010, Plaintiff received a disciplinary referral for recording a class Plaintiff claims she was permitted to record. On April 7, 2010, Defendant Magraw, who instructed one of Plaintiff's classes and was also the Chair of the Doctorate of Psychology Program at the time, stopped a lecture and "forced Plaintiff to explain to the entire class that she had tape-recorded lectures in the past, to explain that she did so because of she has a learning disability and to apologize to the entire class for tape-recording." FAC at ¶¶ 38, 51. On another occasion, Plaintiff received a failing grade in a class because Defendant Walters-Knight (her instructor), Defendant Magraw (the department chair), Defendant Fassinger (the dean of JFKU), or JFKU refused to accept her supplemental coursework. This failing grade precipitated more conflict between Plaintiff and Defendants: Plaintiff claims that when she took the same class the following year, her work was incorrectly graded, and her inquiries about grading were followed by another disciplinary referral and a second failing grade in the class. Plaintiff's failing grades prevented her from sitting for comprehensive exams, which delayed her studies. On yet another occasion, JFKU erased a $5,250 refund credit in Plaintiff's account, causing damage to Plaintiff's personal finances, allegedly in response to Plaintiff's attempts to enforce her rights.

Beginning in April 2010, Plaintiff used JFKU's internal conflict resolution procedures to address the allegedly wrongful conduct of Defendants; this included formal complaints to the department head and the dean. In February 2012, Plaintiff submitted a written complaint for violation of her civil rights to JFKU's vice president, ombudsperson, and Clark Dawood, the Director of Academic Affairs. In April 2012, Mr. Dawood notified Plaintiff that he had completed his investigation and would be convening a panel to hear Plaintiff's complaint. He informed Plaintiff that he would let her know in advance who would be participating on the panel and that Plaintiff would have an opportunity to object to their participation. The following week, Plaintiff objected to the selection of one of the panel members, who was subsequently replaced with a student who had witnessed many of the incidents described above. The panel convened a meeting in May 2012, during which Plaintiff's civil rights complaint and investigation results, as well as confidential information regarding the nature of Plaintiff's disability, were provided to the panelists, who were permitted to take the documents home. Plaintiff's confidential information was disclosed to the

student on the panel without Plaintiff's knowledge or consent, and without any confidentiality agreement in place. All proceedings relating to Plaintiff's civil rights complaint were suspended after Plaintiff requested that Mr. Dawood refrain from further disclosing her personal information and postpone a subsequent panel meeting until Plaintiff's attorney could address the matter. To date, Plaintiff has not received notification from JFKU regarding the outcome of the university's civil rights investigation. In August 2012, Plaintiff filed a complaint with the United States Department of Education, Office for Civil Rights.[3] *Id.* at ¶¶ 122-125.

On March 12, 2013, Plaintiff initiated this action. She concurrently filed a Motion to File Complaint Under A Pseudonym [Docket No. 3], which the general duty judge granted the same day, permitting Plaintiff to file all documents pseudonymously "unless otherwise ordered by [the] assigned judge."

The FAC alleges causes of action for discrimination and retaliation in violation of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act against JFKU, NU, and Defendant Lee; discrimination and retaliation in violation of the California UNRUH Civil Rights Act against all Defendants; unfair business practices against JFKU, NU, and Defendant Lee; breach of written and/or implied contract against JFKU; fraud against JFKU, NU, and Defendant Lee; public disclosure of private facts against Defendants Magraw, JFKU, NU, and Defendant Lee; negligence against all Defendants; and intentional infliction of emotional distress against all Defendants. In pleading the damage allegations in the FAC, Plaintiff included many details about her medical and psychological history, and how Defendants' conduct has caused her to suffer emotional distress and trauma, including exacerbation of existing health problems.

## II. MOTION TO DISMISS *DOE* COMPLAINT

Defendants first move for an order dismissing Plaintiff's *Doe* complaint, and requiring her to proceed in her own name. Federal Rule of Civil Procedure 10(a) requires the title of a complaint to "name all the parties." Federal Rule of Civil Procedure 17(a)(1) states that "[a]n action must be prosecuted in the name of the real party in interest." These rules embody the notion that "plaintiffs'

---

[3] That investigation has been suspended pending the outcome of this litigation.

4

use of fictitious names runs afoul of the public's common law right of access to judicial proceedings." *Does I thru XXIII v. Advanced Textile Corp.,* 214 F.3d 1058, 1067 (9th Cir. 2000) (citing *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 598-99 (1978)); *see also Cox Broadcasting Corp. v. Cohn,* 420 U.S. 469 (1975) ("A trial is a public event. What transpires in the courtroom is public property . . . . There is no special perquisite of the judiciary which enables it, as distinguished from other institutions of democratic government, to suppress, edit, or censor events which transpire in proceedings before it."). "As a general rule, 'the identity of the parties in any action, civil or criminal, should not be concealed except in an unusual case, where there is a need for the cloak of anonymity.'" *United States v. Stoterau,* 524 F.3d 988, 1012 (9th Cir. 2008) (quoting *United States v. Doe,* 488 F.3d 1154, 1155 n. 1 (9th Cir. 2007)). *See also Doe v. Kamehameha Schools/Bernice Pauahi Bishop Estate*, 596 F.3d 1036, 1042 (9th Cir. 2010) ("The normal presumption in litigation is that parties must use their real names. This presumption is loosely related to the public's right to open courts, and the right of private individuals to confront their accusers.") (citations omitted).

    The Ninth Circuit has identified three situations in which parties have been allowed to proceed anonymously: (1) when identification creates a risk of retaliatory physical or mental harm; (2) when anonymity is necessary to preserve privacy in a matter of a sensitive and highly personal nature; and (3) when the anonymous party is compelled to admit his or her intention to engage in illegal conduct, thereby risking criminal prosecution. *See Advanced Textile Corp.,* 214 F.3d at 1068. As recently re-stated by the Ninth Circuit in *Kamehameha Schools,* where a party seeks anonymity under the first category in order to prevent retaliation, courts apply a five-factor balancing test: (1) the severity of the threatened harm, (2) the reasonableness of the anonymous parties' fears, (3) the anonymous party's vulnerability to retaliation, (4) prejudice to the opposing party, and (5) whether the public's interest in the case requires that litigants reveal their identities. 596 F.3d at 1042 (citing *Advanced Textile Corp.,* 214 F.3d at 1068).

    Plaintiff wishes to prosecute her case anonymously in order to keep her learning disability, school records, and information about her mental and physical health history from becoming a matter of public knowledge. She argues that disclosure of this information may result in social and

professional stigmatization. This properly is characterized as a request to preserve her privacy in a matter of a sensitive and highly personal nature. As such, to proceed anonymously, Plaintiff must show that her "need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity." *Advanced Textile Corp.,* 214 F.3d at 1068.

The thrust of Plaintiff's lawsuit is that she suffered discrimination and retaliation due to the fact that she has ADHD. Learning disabilities such as ADHD are not uncommon, nor are they freighted with the high risk of stigmatization that has been deemed sufficient to allow plaintiffs to proceed under fictitious names. *See e.g. Roe v. City of Milwaukee,* 37 F.Supp.2d 1127, 1129 (E.D. Wis. 1999) (holding that revealing a plaintiff's HIV-positive status, unlike most medical conditions, is not a "common disorder" and is still socially stigmatizing); *Jane Doe 8015 v. Sup.Ct.,* 148 Cal. App. 4th 489, 55 Cal. Rptr. 3d 708 (Cal. Ct. App. 2007) (patient allowed to proceed anonymously when suing a laboratory after acquiring HIV from a reused needle)*; Doe v. Rostker,* 89 F.R.D. 158, 161 (N.D. Cal. 1981) ("The most common instances [in which plaintiffs were permitted to proceed anonymously] are cases involving abortion, mental illness, personal safety, homosexuality, transsexuality, and illegitimate or abandoned children in welfare cases."); *Dep't of Fair Employment & Hous. v. Law School Admission Council, Inc.*, Case No. C-12-1830 EMC, 2012 WL 3583023 at *4 (N.D. Cal. Aug. 20, 2012) (ADHD is not an "especially uncommon disorder[]" or one that "carr[ies] a particular risk of social stigmatization"); *Doe v. Blue Cross & Blue Shield United of Wisconsin,* 112 F.3d 869, 872 (7th Cir. 1997) (holding that disclosure of plaintiff's obsessive-compulsive disorder did not warrant use of a fictitious name).

With respect to her academic record, Plaintiff is concerned about revealing the multiple disciplinary referrals and two failing grades she received, all allegedly as a result of Defendants' unlawful conduct. Poor grades and academic discipline may be viewed negatively by some, but such facts do not rise to the level of justifying anonymous prosecution of a lawsuit, especially where Plaintiff asserts that the negative academic history is a direct result of the actions by Defendants that she challenges in this lawsuit.

The fact that Plaintiff has ADHD, as well as the facts regarding blemishes on her academic record, are material to setting forth her causes of action. However, Plaintiff need not provide details

about her mental and physical health in order to adequately plead her case. Rather, such facts pertain to her damage allegations, which could have been stated in far more general terms than Plaintiff opted to use. Plaintiff's decision to set forth health-related details in her complaint was a matter of choice, not requirement.

In determining whether a case merits anonymity, a court may consider whether the feared consequences of disclosing the litigant's identity are extraordinary. *See Southern Methodist University Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 713 (5th Cir. 1979). The social and professional harm that Plaintiff believes will result from disclosure of facts she wishes to keep private is not significantly different than that faced by many plaintiffs who allege damages relating to mental or emotional distress. *See id.* (requiring disclosure of individual plaintiff's identities where they "face no greater threat of [job-related] retaliation than the typical plaintiff alleging Title VII violations, including the other women who, under their real names and not anonymously, have filed sex discrimination suits against large law firms," where the consequences plaintiffs feared included losing business, being assigned less desirable matters, and other professional disadvantages).

Allowing Plaintiff to proceed anonymously would create significant barriers for the defense. Defendants' efforts to investigate the case would be hampered. For example, it is unclear how Defendants would interview potential witnesses to gather facts or to assess Plaintiff's credibility if they could not disclose her name. Third-party discovery would be similarly awkward and difficult. In sum, Plaintiff has not met her burden of establishing that her interest in preserving her anonymity outweighs the prejudice to Defendants such that the public's paramount interest in open court proceedings should be overridden.[4]

---

[4] Plaintiff urges the court to analyze the question under the five-part *Kamehameha Schools* test because she fears retaliation: "If Defendants were to inform any of Plaintiff's instructors or classmates about the ongoing litigation, or even worse about her [private information], her daily life could become a recurring nightmare of retaliation and discrimination." Opp. at 11. The court declines to do so. Plaintiff has not identified any instances of retaliation, even though her counsel admitted at the hearing that Plaintiff has also filed at least two other complaints in her real name, one with the American Psychological Association, and one with the Department of Education Office of Civil Rights. It is also highly likely that the individual Defendants and other JFKU personnel have been able to identify Plaintiff through the detailed descriptions of events set forth in her pseudonymously filed FAC. Plaintiff's concerns about retaliation are speculative, especially when compared to the level of threats

As discussed at the hearing, the court believes that other less drastic measures are available to provide a reasonable level of privacy protection. The court instructed the parties to submit a proposed protective order. The court also indicated that it would be willing to consider requests under Civil Local Rule 79-5 for partial sealing of court filings (i.e., redactions) to protect certain private medical or health information. Finally, the court ordered that the Complaint and FAC be sealed. Plaintiff shall submit a Second Amended Complaint, consistent with the court's rulings below regarding Defendants' Rule 12(b)(6) motion. The court also sealed the pleadings associated with this motion, and ordered the parties to meet and confer on appropriate redactions, and resubmit the pleadings with a Rule 79-5 request for partial sealing.

### III. MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Defendants move to dismiss all claims in the FAC made against Defendants Lee and NU. Defendants also move to dismiss the Unruh Act claims against the individual Defendants. Finally, Defendants move to dismiss the breach of contract and breach of implied contract claims, the unfair business practices and fraud claims, and the claim for public disclosure of private facts.

**A.   Legal Standards**

When reviewing a motion to dismiss for failing to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss the case "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)). A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

---

or retaliation set forth in published cases. *See, e.g., Kamehameha Schools*, 596 F.3d at 1045 (district court did not abuse discretion in determining that plaintiffs' fears of physical retaliation were unreasonable even though anonymous emails and calls had threatened to kill non-Native Hawaiian children); *Advanced Textile*, 214 F.3d at 1071 (plaintiffs had reasonable fear of retaliation where they had been interrogated about, warned against, and threatened for making complaints about their working conditions; threats included termination, blacklisting, deportation, arrest, and imprisonment in the People's Republic of China).

*Iqbal*, 129 S. Ct. at 1949 (citation omitted).  In other words, the facts alleged to demonstrate an "entitle[ment] to relief require[] more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2005) (brackets in original) (quotation marks omitted) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001) ("Conclusory allegations of law . . . are insufficient to defeat a motion to dismiss." (citation omitted)).

Federal Rule of Civil Procedure 15(a) establishes that leave to amend "shall be freely given when justice so requires."

**B.  Claims Against Defendant Lee**

Several of the claims are alleged against Defendant Lee: (1) discrimination and retaliation in violation of the ADA and the Rehabilitation Act; (2) discrimination and retaliation in violation of the California UNRUH Civil Rights Act; (3) unfair business practices; (4) fraud; (5) public disclosure of private facts; (6) negligence; and (7) intentional infliction of emotional distress.  *Id.* at ¶¶ 139-221.     To begin with, Lee is sued in his official capacity as Chancellor of the National University System Board of Trustees.  *Id.* at ¶ 6.  However, "[a] suit against an public officer in his or her official capacity is used to compel that officer to take some official action.  The concept is inapplicable to suits against private parties in a case such as this where the entity is also susceptible to suit."  *Beck v. FedEx Ground*, No. C-07-0717 WBSKJM, 2007 WL 2028581 at *3 (E.D. Cal. July 10, 2007).  *See also Coddington v. Adelphi Univ.,* 45 F.Supp.2d 211, 217 (E.D.N.Y.1999) ("Where, as here, plaintiff seeks relief based upon discrimination allegedly practiced by an educational institution, it is the institution that has the power to make any accommodations required by law.  Therefore, it is the institution that operates the place of public accommodation and is, thus, the proper defendant . . . . [I]t is not necessary to allow plaintiff to pursue his claims against Individual Defendants in their 'official' capacities. Official capacity lawsuits are appropriate in cases involving the naming of government officials. Where, as here, there is a private entity to name, there is no reason to allow a plaintiff to proceed against an individual in his 'official capacity.'").  In this instance, JFKU can be, and is, properly named in the complaint.  Plaintiff appears to concede this point, *see* Opp. to MTD FAC at 2 (stating that "the title given to Dr. Lee's capacity is irrelevant"),

9

and instead contends that Lee exercises authority and control over JFKU and its employees and is therefore vicariously liable as their principal or employer.

Plaintiff's allegations as to Lee are sparse as well as conclusory. The 41-page FAC mentions Lee only once in its factual allegations:

> Defendant DR. JERRY C. LEE ("Dr. Lee") is and was at all relevant times an individual residing in California. Dr. Lee is being sued in his official capacity as Chancellor of the National University System Board of Trustees, the governing body that maintains control and direction over the National University System and affiliates thereof, which includes JFKU. As Chancellor and head of the Board of Trustees, Dr. Lee maintains and exerts substantial oversight and control over JFKU in academic and/or business and/or financial matters as an affiliate of the National University System, to the extent that vicarious liability may be imparted upon him for the unlawful conduct of JFKU.

FAC at ¶ 6.

Normally the existence of an agency relationship is a question of fact. *See Ward v. Mgmt. Analysis Co. Emp. Disability Ben. Plan,* 135 F.3d 1276, 1284 (9th Cir. 1998), *rev'd on other grounds, UNUM Life Ins. Co. of Am. v. Ward,* 526 U.S. 358, 119 S.Ct. 1380 (1999). That does not mean, however, that every allegation of an agency relationship survives a motion under Rule 12(b)(6). The Supreme Court has held that "a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Iqbal,* 550 U.S. 544 at 555 (internal quotations omitted). Yet labels and conclusions are all that Plaintiff has offered in support of a vicarious liability theory against Lee.

Plaintiff offers a final theory for how Lee could be held liable for violations of the ADA: as the "owner or operator" of JFKU. Opp. to MTD FAC at 4. This is similarly conclusory and devoid of any concrete supporting facts. Title III of the ADA prohibits discrimination "by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Generally, the "[i]ndividual defendants cannot be held personally liable for violations of the ADA." *Walsh v. Nevada Dep't of Human Res.*, 471 F.3d 1033, 1038 (9th Cir. 2006). However, an individual may be personally liable for violations of the ADA where if he or she is the "operator" of a place of public accommodation where the discriminatory act occurred. *See, e.g.*, *Lentini v. California Ctr. for the Arts, Escondido*, 370 F.3d 837, 849 (9th Cir. 2004) (holding a director of sales and events of a performing arts center personally liable for discrimination on the basis of

1  disability in violation of Title III of the ADA, where the director had the authority to instruct staff
2  not to admit plaintiff into the theater with her service dog).  The FAC alleges that Lee is the
3  chancellor of a board of trustees that is the governing body of a network of universities that is
4  affiliated with the university at which the alleged acts of discrimination occurred.  By Plaintiff's
5  own description, Lee appears to be several layers removed from the events that underlie her
6  complaint.  Yet, the FAC nevertheless asserts that Lee "maintains and exerts substantial oversight
7  and control over JFKU in academic and/or business and/or financial matters as an affiliate of the
8  National University System."  FAC at ¶ 6.  This is a conclusory allegation and is insufficient to state
9  a claim for Lee's individual liability under the ADA.

10  In sum, all claims against Defendant Lee are dismissed.

**C.  Claims Against NU**

The FAC alleged several claims against NU: (1) discrimination and retaliation in violation of the ADA and the Rehabilitation Act; (2) discrimination and retaliation in violation of the California UNRUH Civil Rights Act; (3) unfair business practices; (4) fraud; (5) public disclosure of private facts; (6) negligence; and (7) intentional infliction of emotional distress.  *Id.* at ¶¶ 139-221.

As with Defendant Lee, Plaintiff's factual allegations against NU are minimal.  Plaintiff alleges that NU "maintains, and does business as, the National University System, a group of affiliated institutions of higher education governed by the National University System Board of Trustees."  FAC at ¶ 5.  Plaintiff also alleges that NU "represents that JFKU is an affiliate of NU, and, upon information and belief, National University and/or the National University Board of Trustees directs and/or retains and exerts substantial control over JFKU in academic and/or business, and/or financial matters, such that JFKU is an actual or apparent agent" of NU.  *Id.*

The claims against NU fail for the same reason that the claims against Lee fail: these allegations are bare and conclusory, and are insufficient to support claims based on NU's purported vicarious liability.  Accordingly, all claims against NU are dismissed.[5]

---

[5] At the hearing, the court ascertained that Plaintiff has no further facts to support her claims against Lee and NU at this time.  Plaintiff requested an opportunity to obtain some discovery and to seek leave to add claims against those defendants if appropriate.  For this reason, the claims against Lee and Nu are dismissed without prejudice.

### D. Unruh Claims Against Individual Defendants

Plaintiff's third and fourth causes of action allege discrimination and retaliation in violation of California's Unruh Act against all Defendants. Defendants argue that because "Plaintiff's Unruh claims are premised on allegations identical to those underpinning her ADA claims," and individuals are generally not subject to suit under the ADA, the Unruh Act claims against the individual Defendants fail to state a claim. MTD FAC at 4.

Defendants' argument amounts to false equivalence. The Unruh Act provides that "(b) [a]ll persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51. "To prevail on [a] disability discrimination claim under the Unruh Civil Rights Act, [a] plaintiff must establish that (1) [s]he was denied the full and equal accommodations, advantages, facilities, privileges, or services in a business establishment; (2) [her] disability was a motivating factor for this denial; (3) defendants denied plaintiff the full and equal accommodations, advantages, facilities, privileges, or services; and (4) defendants' wrongful conduct caused plaintiff to suffer injury, damage, loss or harm." *Wilkins-Jones v. Cnty. of Alameda*, 859 F. Supp. 2d 1039, 1048 (N.D. Cal. 2012) (citing California Civil Jury Instructions (BAJI), No. 7.92 (Spring 2009)). Nothing in the plain language of the Unruh Act precludes individual liability. *See* Cal. Civ. Code § 52(a) ("Whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to Section 51 . . . is liable" for damages); *Angelucci v. Century Supper Club,* 41 Cal. 4th 160, 167, 59 Cal. Rptr. 3d 142 (2007) (holding that the Unruh Act "must be construed liberally in order to carry out its purpose"); *Swann v. Burkett*, 209 Cal. App. 2d 685, 686, 26 Cal. Rptr. 286, 287 (Cal. Ct. App. 1962) (holding that an individual landlord may be held liable under the Unruh Act).

As Defendants did not move to dismiss the Unruh Act claim on any other basis, Plaintiff may pursue her Unruh Act claim against the individual Defendants, notwithstanding the fact that individual liability is not available under the ADA. Defendants' motion to dismiss the Unruh Act claims against the remaining individual Defendants is denied.

**E. Express and Implied Contract Claims**

The sixth cause of action is for breach of written and/or implied contract[6] against JFKU for failing to meet the accreditation standards required by the Western Association of Schools and Colleges ("WASC") and the American Psychological Association ("APA"). The seventh cause of action is for breach of implied contract against JFKU for failing to perform under "an obligation, express or implied, that JFKU provide and maintain an office of disability services for students, and through that office ensure that students with disabilities are properly accommodated throughout their educational experience." *Id.* at ¶¶ 180-81.

"A cause of action for breach of contract requires pleading of a contract, plaintiff's performance or excuse for failure to perform, defendant's breach and damage to plaintiff resulting therefrom." *McKell v. Washington Mut., Inc.*, 142 Cal. App. 4th 1457, 1489, 49 Cal. Rptr. 3d 227, 253 (Cal. Ct. App. 2006) (citing 4 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 476 at 570). Plaintiff's contract claims are insufficient because she has not clearly pleaded the existence of a contract or contracts. She did not attach a copy of a contract, quote from its terms, or sufficiently allege its legal effect. Her description is vague. For example, with respect to her sixth claim, Plaintiff alleges that a "valid written and implied contract" exists between Plaintiff and JFKU whereby Plaintiff paid tuition in exchange for JFKU's promise to provide education through classroom lectures and other means, and that "[i]ncorporated in that agreement is JFKU's representation of WASC and APA accreditation and promise to adhere to WASC and APA standards." FAC at ¶¶ 132-134, 174. Plaintiff does not explain how these standards are "incorporated" into the alleged contract, nor does she set forth which specific standards JFKU has incorporated into and breached in its express or implied contract with Plaintiff, or the specific requirements of those standards. Without these allegations, it is not possible to determine the contours of the purported contract.

---

[6] The court notes that Plaintiff may proceed with alternative claims at the pleading stage, but ultimately JFKU cannot be held liable for both breach of express contract and breach of implied contract on the same subject matter. *See Philips Medical Capital, LLC v. Medical Insights Diagnostics Ctr., Inc.*, 471 F.Supp.2d 1035, 1047 (N.D. Cal. 2007) (while a party cannot ultimately recover based on an implied contract where there exists a valid express contract covering the same subject matter, parties may plead the theories in the alternative).

1    Plaintiff's seventh cause of action for "breach of implied contract" is similarly flawed.  Here,
2 Plaintiff alleges that the terms of the contract include an obligation, express or implied, that JFKU
3 provide and maintain an office of disability services for students, and through that office ensure that
4 students with disabilities are properly accommodated throughout their educational experience. FAC
5 at ¶¶ 180-81.  As with the sixth cause of action, the seventh cause of action is insufficiently pleaded.
6 The FAC alleges neither express language in a contract nor conduct implying a contractual
7 obligation to underpin its allegation that JFKU has a contract with Plaintiff which includes an
8 agreement to provide and maintain an office of disability services.
9    At the hearing, Plaintiff represented that she has further facts to allege in support of these
10 claims.  Therefore, Plaintiff's contract claims are dismissed with leave to amend.

**F. Fraud and Unfair Business Practices Claims**

   **i) Fraud Claim**

Plaintiff alleges one cause of action for intentional misrepresentation against JFKU:

> Beginning in May 2009 in Alameda and Contra Costa Counties, California, and continuing to the present, JFKU intentionally misrepresented compliance with WASC and APA guidelines, through written student handbooks and other university publications provided to students annually, as well as through oral representations from administrators and faculty including but not limited to Dr. Magraw, Dr. Walters-Knight, and Dr. Soltani during the specific classes and courses described herein, to induce Plaintiff to attend and continue attending JFKU.
>
> JFKU's purported compliance with WASC and APA standards is misleading insofar as JFKU has routinely been, and continues to be, in jeopardy of losing its WASC and/or APA accreditation and intentionally withholds this information from prospective students.
>
> Additionally, JFKU does not adhere or comply with WASC and/or APA accreditation standards regarding disability accommodations and prohibitions against discrimination and retaliation. Examples of noncompliance include, but are not limited to, JFKU's repeated discrimination and retaliation against Plaintiff for use of her approved disability accommodations, and failure to comply with Plaintiff's disability accommodations.

FAC at ¶¶ 185-187.  In addition, Plaintiff alleges that JFKU concealed this information from Plaintiff, that she did not know that JFKU was failing to adhere to WASC and/or APA accreditation standards, that she reasonably relied on JFKU's misrepresentations and enrolled at JFKU, and that she suffered damages as a result of JFKU's fraudulent conduct. *Id.* at ¶¶ 188-195.

   To establish a claim for intentional misrepresentation, "the plaintiff must prove seven essential elements: (1) the defendant represented to the plaintiff that an important fact was true; (2)

that representation was false; (3) the defendant knew that the representation was false when the defendant made it, or the defendant made the representation recklessly and without regard for its truth; (4) the defendant intended that the plaintiff rely on the representation; (5) the plaintiff reasonably relied on the representation*;* (6) the plaintiff was harmed; and (7) the plaintiff's reliance on the defendant's representation was a substantial factor in causing that harm to the plaintiff." *Manderville v. PCG & S Grp., Inc.*, 146 Cal. App. 4th 1486, 1498, 55 Cal. Rptr. 3d 59, 68 (Cal. Ct. App. 2007).

Rule 9(b) of the Federal Rules of Civil Procedure requires that, when alleging fraud, "a party must state with particularity the circumstances constituting fraud . . . ." Fed. R. Civ. P. 9(b). Any averments which do not meet that standard should be "disregarded," or "stripped" from the claim for failure to satisfy Rule 9(b). *Id.* The Ninth Circuit has described the heightened pleading requirements under Rule 9(b) as follows:

> Rule 9(b) demands that the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong. Averments of fraud must be accompanied by "the who, what, when, where, and how" of the misconduct charged. A party alleging fraud must set forth *more* than the neutral facts necessary to identify the transaction.
>
> Rule 9(b) serves three purposes: (1) to provide defendants with adequate notice to allow them to defend the charge and deter plaintiffs from the filing of complaints as a pretext for the discovery of unknown wrongs; (2) to protect those whose reputation would be harmed as a result of being subject to fraud charges; and (3) to prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis.

*Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124-25 (9th Cir. 2009) (quotations and citations omitted).

The FAC fails to state the fraud claim because it does not meet the heightened pleading standards under Rule 9(b). The "who, what, when, where, and how" of the intentional misrepresentation claim is not clear. To give one example, the FAC does not specify the contents of the "oral representations from administrators and faculty including but not limited to Dr. Magraw, Dr. Walters-Knight, and Dr. Soltani during the specific classes and courses described herein," or that those communications were false. Plaintiff's cause of action for intentional misrepresentation is dismissed with leave to amend.

**ii) Unfair Business Practices Claim**

California's Unfair Competition Law ("UCL") prohibits "unlawful, unfair or fraudulent business act[s] or practice[s]" and "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof.Code § 17200. The FAC alleges that each of the following constitute unfair business practices, unlawful conduct, and/or fraudulent conduct in violation of the UCL: discrimination and retaliation in violation of the ADA and § 504 of the Rehabilitation Act; discrimination and retaliation in violation of the Unruh Act; and fraud regarding JFKU's misrepresentations about WASC, and APA accreditation standards and policies. FAC at ¶¶ 165-171. Defendants move to dismiss the UCL claim in its entirety, but only argue that the FAC does not meet the heightened pleading standard for the fraud-based UCL claim.

The Ninth Circuit has "specifically ruled that Rule 9(b)'s heightened pleading standards apply to claims for violations of the . . . UCL." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). To the extent that Plaintiff's UCL claim is premised on the "fraud regarding JFKU, WASC, and APA accreditation standards and policies," it fails to meet the pleading standards of Rule 9(b) for the reasons stated above and is dismissed with leave to amend. However, Plaintiff's remaining UCL theories may go forward.

### G. Claim for Public Disclosure of Private Facts

Plaintiff alleges a cause of action for public disclosure of private facts against Defendants Magraw and JFKU. Plaintiff identifies two events that form the basis for this cause of action. The first is the incident on April 7, 2010, when Magraw allegedly required Plaintiff to reveal her learning disability and apologize for her accommodation to her class. The second involves a meeting in May 2012 of the panel considering Plaintiff's internal civil rights complaint, when "JFKU permitted Plaintiff's confidential health information to be disclosed to individuals other than necessary JFKU faculty, and allowed those individuals to take Plaintiff's confidential private health and educational information home without any type of confidentiality agreement in place and without Plaintiff's consent." FAC at ¶ 199.

The elements of a claim for public disclosure of private facts under California law are "1) public disclosure (2) of a private fact (3) which would be offensive and objectionable to the

16

1  reasonable person and (4) which is not of legitimate public concern." *Shulman v. Grp. W Prods.,*
2  *Inc.*, 18 Cal. 4th 200, 214, 955 P.2d 469 (1998).

3  First, Defendants argue that the disclosures alleged would not be offensive to a reasonable
4  person. Defendants contend that the disclosure of Plaintiff's confidential information to the civil
5  rights panel could not be offensive to a reasonable person because it is authorized under the Family
6  Educational Rights and Privacy Act ("FERPA"), 34 C.F.R. § 99.31(a)(1)(i)(A)-(B). Under FERPA,
7  "[a]n educational agency or institution may disclose personally identifiable information from an
8  education record of a student without . . . consent . . . (A) [if] [t]he disclosure is to other school
9  officials, including teachers, within the agency or institution whom the agency or institution has
10 determined to have legitimate educational interests . . . [or] (B) . . . [a] volunteer, or other party to
11 whom an agency or institution has outsourced institutional services or functions maybe considered a
12 school official." 34 C.F.R. § 99.31(a)(1)(i)(A)-(B). Plaintiff apparently concede that the disclosure
13 to the panel was authorized under FERPA, because she offered no responsive argument in in her
14 opposition brief. Thus, the May 2012 revelation of Plaintiff's confidential information to the civil
15 rights panel may not serve as the basis for this claim. However, Plaintiff also argues that permitting
16 the panelists to take the information outside of the review panel and disclose it to third parties went
17 beyond what was permitted by FERPA. Defendants did not assert that such a disclosure falls within
18 the scope of the regulation permitting disclosure of student information without consent for
19 legitimate educational interests, nor did the court find any cases defining the scope of the permitted
20 disclosure. Therefore, the court finds that Plaintiff has adequately pleaded a claim for public
21 disclosure of private facts to the extent it is supported by the allegation that JFKU improperly
22 permitted the panelists to take confidential information outside of the review panel and disclose it to
23 third parties.[7]

---

[7] At the hearing, the court indicated that its tentative ruling was to dismiss this claim with respect to all allegations stemming from the May 2012 disclosure of Plaintiff's confidential information to the civil rights panel. However, upon further review of the parties' briefs, the court notes that Plaintiff appears to be conceding only that one aspect of the May 2012 disclosure was not offensive to a reasonable person.

17

As for the April 7, 2010 incident, Defendants argue that Plaintiff's forced disclosure of her mental disability and her accommodation "occurred in an environment in which students routinely discuss sensitive and personal matters," and as such could not be offensive to a reasonable person. MTD FAC at 8-9. Defendants also contend that Plaintiff has failed to allege a disclosure to the public, because the above incidents do not involve disclosure to sufficient amounts of people. "[T]he tort must be accompanied by publicity in the sense of communication to the public in general or to a large number of persons as distinguished from one individual or a few. Accordingly, Prosser has noted, '[i]t is an invasion of the right [of privacy] to publish in a newspaper that the plaintiff does not pay his debts, or to post a notice to that effect in a window on the public street or cry it aloud in the highway; but . . . it has been agreed that it is no invasion to communicate that fact to the plaintiff's employer, or to any other individual, or even to a small group.'" *Timperley v. Chase Collection Serv.*, 272 Cal. App. 2d 697, 700, 77 Cal. Rptr. 782 (Cal. Ct. App. 1969) (citation omitted, brackets in original) (quoting Prosser, Privacy, 48 Cal. L. Rev. 383, 393 (1960)). "[N]o California case has defined the number of people necessary to justify a finding of publicity" for purposes of a claim of public disclosure of private facts. *Kinsey v. Macur*, 107 Cal. App. 3d 265, 271, 165 Cal. Rptr. 608, 611 (Cal. Ct. App. 1980). As noted by that court, "[t]he claim is not so much one of total secrecy as it is the right to *define* one's circle of intimacy . . . ." 107 Cal. App. 3d at 272 (citing *Briscoe v. Reader's Digest Association, Inc.*, 4 Cal.3d 529, 534, 93 Cal. Rptr. 866, 869 (1971), italics in original).

Here, Plaintiff alleges she was humiliated and forced to reveal details about her disability and accommodation to a classroom of her peers, who will presumably be her colleagues in her professional field. She has sufficiently pleaded the claim. The issues of whether the disclosures were offensive and public involve questions of fact that are inappropriate for resolution at the pleading stage.

Accordingly, Defendants' motion to dismiss Plaintiff's claim for public disclosure of private facts is denied.

## V. CONCLUSION

For the reasons stated above, the motion to dismiss the *Doe* complaint is granted, and the motion to dismiss for failure to state a claim is granted in part and denied in part.  The original Complaint and FAC [Docket Nos. 1 and 19] and the Motion to File Complaint Under A Pseudonym [Docket No. 3] shall be sealed by the court; the briefing for the motion to dismiss the *Doe* complaint [Docket Nos. 11, 14, 20] shall be sealed, and the parties are directed to meet and confer regarding redactions to those briefs and then submit a motion to file partially sealed versions of those briefs to the court by September 5, 2013.  Plaintiff is granted leave to file a second amended complaint, in her own name and otherwise consistent with this order, by September 5, 2013.

IT IS SO ORDERED.

Dated:  August 27, 2013

DONNA M. RYU
United States Magistrate Judge